United States District Court
Southern District of Texas

**ENTERED**

April 20, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| LUDOVICO TOMASSO, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00280 |
| | § | |
| BONNIE PEDDLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

There are five motions pending in this case, which concerns maritime liens asserted against a yacht, the *Southern Bell*: (1) Plaintiff Ludovico Tomasso's motion for partial summary judgment against Defendant Bonnie Peddle (Dkt. 34); (2) Tomasso's motion for partial summary judgment against Defendants 9371893 Canada Inc. and Forza 5 Energie Inc. (Dkt. 35); (3) Peddle's motion for judgment on the pleadings (Dkt. 39); (4) 9371893 Canada and Forza 5's motion to dismiss (Dkt. 40); and (5) Peddle's motion to strike and exclude Dkt. 50-2 or, in the alternative, for leave to file a sur-reply to Tomasso's motion for partial summary judgment against Peddle (Dkt. 53).

Having reviewed the briefing, the record, and the applicable law, I recommend that the court sua sponte dismiss Tomasso as the plaintiff, because he lacks standing to assert claims on behalf of the *Southern Bell*. I further recommend that, before the court dismisses this matter entirely for lack of subject matter jurisdiction, the court afford the real party in interest—the owner of the *Southern Bell*—21 days to move for substitution as the plaintiff in this action.

## BACKGROUND[1]

This dispute concerns the validity of two maritime liens asserted against the *Southern Bell*. *See* Dkt. 1-2. Tomasso and Peddle—both Canadian citizens—were married from 1999 until 2022. During their marriage, Peddle became the president of two Canadian corporations, 9371893 Canada and Forza 5.

In 2014, Tomasso purchased the *Southern Bell*. *See* Dkt. 1-3 at 7. It appears as if Tomasso sold the *Southern Bell* to Forza Yacht Sales & Marine Services, LLC, a Florida limited liability company, which then transferred ownership of the vessel to B.E.L.L. Marine LLC, a Texas limited liability company. The corporate formation document for Forza Yacht lists Linda Lee Krantz, Tomasso, and Peddle as members. *See* Dkt. 40-1 at 3. The corporate formation document for B.E.L.L. lists Tomasso and Peddle as governing persons. *See* Dkt. 40-3 at 2–3. At present, the *Southern Bell* appears to be registered to B.E.L.L. *See* Dkt. 40-5 at 2. Importantly, it is undisputed that Tomasso, individually, does not currently own the *Southern Bell*.

On August 8, 2018, Krantz executed a Notice of Claim of Lien against the *Southern Bell*. Krantz claimed that the *Southern Bell* owed her $21,625 for work performed as a project manager and consultant. *See* Dkt. 1-1 at 3.

Tomasso filed for divorce in July 2020. On December 5, 2020, Peddle, acting in her role as president of 9371893 Canada, executed a Notice of Claim of Lien against the *Southern Bell*. Peddle claimed that 9371893 Canada had loaned $318,307.87 USD for work on the *Southern Bell*, including ship repairs, painting, and mechanical services, plus interest. *See* Dkt. 1-2 at 4. That same day, Peddle, acting as president of Forza 5, executed a second, nearly identical lien claiming $198,882.72 USD for similar work on the *Southern Bell*. *See id.* at 8. Both liens list the mortgagee as "Ludovico Tomasso & B.E.L.L. Marine LLC." *Id.* at 5, 9.

---

[1] These facts are taken from Tomasso's "complaint supplemented by undisputed facts evidenced in the record." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

At the time of the divorce, the *Southern Bell* was included in the family patrimony.[2] *See* Dkt. 1-3 at 6. 9371893 Canada's bank accounts and Peddle's share capital of 9371893 Canada were included in the partnership of acquests.[3] On November 8, 2022, the couple finalized their divorce and were issued a judgment in the Superior Court of Montreal, Quebec, Canada (the "Divorce Decree").

In the Divorce Decree, the *Southern Bell* was appraised at a value of $265,525.70 CDN, and Tomasso was ordered to pay Peddle for half of the appraised value of the *Southern Bell*. *See* Dkt. 1-3 at 7. The Divorce Decree did not mention the parties' interests in B.E.L.L., Forza Yacht, or either entity's purported ownership of the *Southern Bell*.

On September 24, 2024, Tomasso instituted this lawsuit against Peddle, 9371893 Canada, Forza 5, and Krantz. Tomasso seeks to invalidate the maritime liens that 9371893 Canada, Forza 5, and Krantz assert against the *Southern Bell* on the grounds that the liens are improperly asserted as maritime liens or, alternatively, that the liens are barred by res judicata.

Peddle and the Corporations have moved to dismiss under Rule 12(b)(6) arguing, among other things, that Tomasso lacks capacity to challenge the validity of maritime liens asserted against a vessel that he does not own. Although Defendants bring their motions under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, Defendants' capacity arguments are more

---

[2] Like the common law concept of community property, "family patrimony" is a civil law regime under which, "irrespective of which spouse holds title, both share the net increase in value, during the marriage, of the family's residences and their furnishings, motor vehicles used by the family, and retirement plans." Robert Leckey, *Cohabitation Law in Quebec: Confusing, Incoherent, and Unjust*, 44 Hous. J. Int'l L. 331, 339 (2022).

[3] The partnership of acquests is the default legal matrimonial regime that governs the division of assets excluded from the family patrimony. *See* Claire L'Heureux-Dube, *The Quebec Experience: Codification of Family Law and A Proposal for the Creation of A Family Court System*, 44 La. L. Rev. 1575, 1593–96 (1984). Tomasso alleges that both 9371893 Canada and Forza 5 were in the family patrimony at the time of divorce. *See* Dkt. 1 at 5. That allegation is contradicted by the Divorce Decree, which does not list either corporation in the family patrimony. *See* Dkt. 1-3 at 7–8.

accurately construed as a challenge to Tomasso's standing and, consequently, this court's subject matter jurisdiction.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issue may be raised by parties, or by the court *sua sponte*, at any time." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (cleaned up), *abrogated by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Because Article III standing is a prerequisite to the court's subject matter jurisdiction, "[t]he question of Article III standing must be decided prior to [] prudential standing." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002).

The "irreducible constitutional minimum of [Article III] standing contains three elements": (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of . . . fairly traceable to the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "Failure to establish any one [element] deprives the federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quotation omitted). "One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quotation omitted).

Standing may be addressed facially or factually. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "An attack is 'factual' rather than 'facial' if the defendant submits affidavits, testimony, or other evidentiary materials." *Superior MRI*, 778 F.3d at 504 (quotation omitted). "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id.* (quotation omitted).

### TOMASSO HAS NOT ESTABLISHED STANDING

In his complaint, Tomasso articulates the reasons why he believes that the liens in question are invalid, but Tomasso does not articulate a cognizable injury to himself. It is difficult to see how Tomasso could articulate such an injury given that he does not own the *Southern Bell*. Although Tomasso is a manager of B.E.L.L., "a member of an LLC . . . lacks standing to sue individually where the cause of action belongs to the company, unless its alleged harm is distinct from harm suffered by the company."[4] *Cruden Bay Holdings, LLC v. JPMorgan Chase*

---

[4] There is a dispute as to whether Peddle presently has an ownership interest in B.E.L.L. Although B.E.L.L.'s 2017 Certificate of Formation shows that both Tomasso and Peddle are managers, *see* Dkt. 40-3 at 2–3, Tomasso claims that "Peddle is simply no longer a manager of [B.E.L.L.]." Dkt. 47 at 3. I need not wade into these waters. It makes no difference to this court whether B.E.L.L. is controlled by Tomasso alone or Tomasso and Peddle jointly. At this juncture, it matters only that Tomasso is not the *Southern Bell*'s owner, and he can point to no legally cognizable possessory interest in the *Southern Bell* that would give him standing to bring this lawsuit.

Assuming Peddle does have an interest in B.E.L.L., that raises a separate problem with the liens. In addition to being expired, the relationship of the various corporate entities

*Bank N.A.*, No. 3:21-cv-1170, 2024 WL 3974724, at *2 (N.D. Tex. Aug. 27, 2024); *see also* Tex. Bus. Orgs. Code Ann. § 101.106(b). ("A member of a limited liability company or an assignee of a membership interest in a limited liability company does not have an interest in any specific property of the company."). Because Tomasso does not allege harm to himself that is distinct from harm suffered by B.E.L.L., Tomasso has not alleged an injury sufficient to establish Article III standing.

To overcome this obvious hurdle, Tomasso offers an affidavit stating that he has "a right of possession of the *Southern Bell*" because it "has been [his] residence since January of 2020 and is currently [his] residence." Dkt. 48-1 at 2. Yet, Tomasso does not allege in his complaint that the liens affect his ability to reside on the *Southern Bell*. As for Tomasso's conclusory statement that he has a right of possession, that is a legal question for this court to answer, not a fact that Tomasso can simply assert.

The "right of possession" language comes from Supplemental Admiralty Rule C, which states that an in rem proceeding may be brought by "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action." Supp. R. C(6)(1)(i).[5] This litigation, however, is not an in rem proceeding. Although Tomasso alleges that the *Southern Bell* is in this district, the

---

to each other through Tomasso and Peddle implicates the "well-settled law that a vessel owner, part owner, or joint venturer cannot hold a maritime lien on the vessel in which he enjoys such an interest." *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 186 (W.D. La. 1985), *aff'd and remanded*, 802 F.2d 160 (5th Cir. 1986). If this court had jurisdiction to entertain this dispute, equity would likely demand that this court pierce the corporate veil because "those who share responsibility for incurring the debts of the vessel ought not to be reimbursed out of that vessel's proceeds to the detriment of other lienholders." *Id.*

[5] Rule C states that an action in rem may be brought "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." Supp. R. C(1)(b). The Commercial Instruments and Maritime Liens Act (CIMLA) is such a statute. Under CIMLA, federal district courts have jurisdiction to "declare that a vessel is not subject to a lien . . . or that the vessel is not subject to the notice of claim of lien, or both." 46 U.S.C. § 31343(c)(2).

*Southern Bell* is not named in Tomasso's complaint, nor is it arrested or attached in this jurisdiction.

"Courts often speak as though physical presence of the res within the territorial jurisdiction of the district court, *along with the attachment of the res*, is a hard-and-fast jurisdictional prerequisite for an action in rem, particularly in admiralty." *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 183 (2d Cir. 2018) (emphasis added) (collecting cases). The only exception to this hard-and-fast jurisdictional requirement is "if the owner of the *res* voluntarily appears." *Id.* (quotation omitted). In other words, this court is without jurisdiction to hear this dispute under Rule C unless the owner of the *Southern Bell* appears and waives the requirement that the *Southern Bell* be arrested or attached in this jurisdiction. Tomasso does not allege that he owns the *Southern Bell*. Accordingly, this court is without jurisdiction to entertain this dispute.

Tomasso contends that under Supplemental Admiralty Rule C(6), "ownership interest is not limited to the titular owner of the vessel" and "[i]t is undisputed that Mr. Tomasso has a right of possession as he currently resides on the vessel . . . and has resided on the vessel since 2020." Dkt. 48 at 4. Yet, Tomasso fails to provide any legal authority for his right of possession. Tomasso does not allege that he has, for example, a bareboat charter or a bailment for the *Southern Bell*.[6] Rather, Tomasso's only claim to ownership is that he lives on the *Southern Bell*. But simply occupying the vessel, in the absence of some legal agreement, does not give Tomasso a legal right of possession that would confer Article III standing to challenge the liens on the *Southern Bell*.

---

[6] *See, e.g. Reed v. S. S. Yaka*, 373 U.S. 410, 412 (1963) ("It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner pro hac vice."); *United States v. $746,198 in U.S. Currency, more or less*, 299 F. Supp. 2d 923, 931 (S.D. Iowa 2004) ("[A] bailee has a possessory interest in bailed property sufficient to assert a claim against anyone, other than the bailor, who interferes with that interest.").

Tomasso requests that, if this court finds "that only B.E.L.L. . . . has the right to defend the [*Southern Bell*]," that he be given "the opportunity to amend to add B.E.L.L. . . . as a party." Dkt. 47 at 10. Tomasso supplies no legal support for the notion that a party without standing can move to amend. Even so, Rule 17 states that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Accordingly, this court should allow 21 days for the *Southern Bell*'s owner—or anyone with a legally cognizable possessory interest in the *Southern Bell*—to move to be substituted as the plaintiff in this action. Should the owner appear and so move, "the action proceeds as if it had been originally commenced by the real party in interest." *Id.*

## CONCLUSION

For the reasons discussed above, I recommend that the court sua sponte dismiss Tomasso as the plaintiff and give the real party in interest 21 days from the date this memorandum and recommendation is adopted to move for substitution as the plaintiff in this action. If no such motion is filed within 21 days, the court should dismiss this matter for lack of subject matter jurisdiction. I also recommend that all pending motions (Dkts. 34, 35, 39, 40, and 53) be denied as moot.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this __20th__ day of April 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8