United States District Court
Southern District of Texas
**ENTERED**
August 31, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| LUDOVICO TOMASSO, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00280 |
| | § | |
| BONNIE PEDDLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION[1]

This is a suit in admiralty regarding three maritime liens asserted against a yacht, the *Southern Bell*. The *Southern Bell* is owned by B.E.L.L. Marine, LLC. The *Southern Bell* is not attached or arrested in this district, and B.E.L.L. did not institute this lawsuit. Rather, this lawsuit was instituted by one of B.E.L.L.'s two initial managers: Ludovico Tomasso. B.E.L.L.'s other initial manager is Tomasso's ex-wife and a defendant in this action: Bonnie Peddle.

On April 20, 2026, I recommended that the court sua sponte dismiss Tomasso as the plaintiff, give the real party in interest—the *Southern Bell*'s owner—21 days to move for substitution as plaintiff, and, if no such motion was filed, dismiss this case for lack of subject matter jurisdiction. *See* Dkt. 56. Judge Jeffrey V. Brown adopted my recommendation on June 4, 2026. *See* Dkt. 57.

On June 25, 2026, Tomasso's counsel, Kyle Giacco, filed a motion to substitute B.E.L.L., individually and on behalf of the *Southern Bell*, as plaintiff. *See* Dkt. 58. On July 30, 2026, Peddle and two companies—Defendants 9371893 Canada, Inc. ("Canada"), and Forza 5 Energie, Inc. ("Forza 5")—responded that B.E.L.L.'s motion was "legally defective" because Peddle is a manager of B.E.L.L. and did not consent to B.E.L.L.'s substitution as plaintiff. Dkt. 61 at 2.

---

[1] "There can only be one captain to a ship . . . . Masters two, Will not do." C. H. Spurgeon, *The Salt-Cellars* 9 (1889) (cleaned up). Let this be a word of warning to any couple who would go into business together.

The record shows that B.E.L.L. was formed with two initial managers: Tomasso and Peddle.[2] *See* Dkt. 40-3. Peddle argues that "[t]he business judgment rule reserves the decision of whether to file suit to a company's managers," and "Tomasso has neither sought nor obtained Ms. Peddle's assent to authorize the filing of suit on B.E.L.L. Marine LLC's behalf." Dkt. 61 at 2.

In his reply brief, Tomasso advances a number of arguments for why he can legally authorize B.E.L.L.'s motion for substitution unilaterally: (1) Peddle lost all legal and equitable rights to B.E.L.L. in the parties' Canadian divorce proceeding; (2) "Peddle has not been a manager of B.E.L.L. Marine, LLC for years"; (3) "Peddle's opposition [to B.E.L.L.'s motion for substitution] is prompted by her own self-interest and a breach of her duty of loyalty to B.E.L.L."; (4) B.E.L.L.'s motion for substitution "is within the ordinary course of business, which does not require a vote of managers"; (5) "Tomasso can bring this suit on behalf of B.E.L.L. Marine, LLC as a derivative action"; and (6) B.E.L.L. "in the ordinary course of business, has come to an agreement with Mr. Tomasso giving him possessory rights of the vessel." Dkt. 62 at 2. None of Tomasso's arguments are availing.

I assume the parties have supplied the court with all documents relevant to B.E.L.L.'s formation and governance. Should either party have a document that materially changes my analysis, they can supply such a document with their objections to this memorandum and recommendation. On the record before me, however, Tomasso lacked the authority to direct B.E.L.L. to file its motion for substitution. Because B.E.L.L. is not lawfully before this court and because

[2] A "manager" is "a person designated as a manager of a limited liability company that is not managed by members of the company." Tex. Bus. Orgs. Code § 1.002(51). "[I]n the case of a limited liability company," a "member" is "a person who has become, and has not ceased to be, a member in the limited liability company as provided by its governing documents or [the Texas Business Organizations Code]." *Id.* § 1.002(53)(A). "'Membership interest' means a member's interest in an entity. With respect to a limited liability company, the term includes a member's share of profits and losses or similar items and the right to receive distributions, but does not include a member's right to participate in management." *Id.* § 1.002(54).

Tomasso does not individually have a cause of action to challenge the liens at issue, this case should be dismissed without prejudice. *See* Dkt. 56.

**B.E.L.L. WAS NOT PART OF THE CANADIAN DIVORCE**

Tomasso argues that the Canadian divorce court allocated ownership of the *Southern Bell* to Tomasso in exchange for Tomasso paying half of the *Southern Bell*'s value to Peddle, and that such an action "implicitly also allocated the ownership of [B.E.L.L.] to Mr. Tomasso." Dkt. 62 at 3.

In support of this argument, Tomasso attaches the Canadian divorce judgment, which does not mention B.E.L.L. *at all*, or the *Southern Bell* for that matter.[3] The Canadian divorce court could not have allocated the *Southern Bell*'s ownership between Tomasso and Peddle when neither of them, as individuals, owns the *Southern Bell*. Even if the Canadian divorce court could and did allocate the *Southern Bell*'s ownership between Tomasso and Peddle, that fact would have no bearing on B.E.L.L.'s membership or management.

Neither Tomasso's nor Peddle's membership interest in B.E.L.L., if any, was included in the family patrimony. The record identifies Tomasso and Peddle as B.E.L.L.'s initial managers but does not identify any of B.E.L.L.'s members. That issue is of no moment, however, because Texas law is clear: "A member of a limited liability company . . . does not have an interest in any specific property of the company." Tex. Bus. Orgs. Code § 101.106(b). Ownership of a membership interest does not give a member an ownership interest in any specific LLC property—and vice versa. Therefore, a Canadian court's allocation of whatever ownership interests Tomasso and Peddle had in the *Southern Bell* as individuals does not say anything about their membership interests in B.E.L.L., assuming that they are members, or their right to manage B.E.L.L.

[3] The parties seem to agree that the unidentified "82-foot 'super yacht'" that the Canadian divorce court referred to as the "Texas yacht" is in fact the *Southern Bell*. Dkt. 62-1 at 9.

## TOMASSO HAS NOT SHOWN PEDDLE'S REMOVAL AS MANAGER

Tomasso next argues that Peddle has not been a manager of B.E.L.L. for years. In support of this argument, Tomasso points to franchise tax information reports that B.E.L.L. filed from 2018–2024. These reports, which are filed only once a year and can include incorrect information, are not evidence that Peddle was effectively removed as a manager. *See Management and Ownership FAQs*, Texas Secretary of State, https://www.sos.state.tx.us/corp/managementin fofaqs.shtml (last visited Aug. 31, 2026). Unless B.E.L.L. has a governing document or bylaws that state otherwise—documents that Tomasso or Peddle presumably would have produced with or in response to B.E.L.L.'s motion, if they existed—the default rule in Texas is that a manager of an LLC "serves: (1) for the term, if any, for which the manager is elected and until the manager's successor is elected; or (2) until the earlier resignation, removal, or death of the manager." Tex. Bus. Orgs. Code § 101.303. Ordinarily, "a manager of a limited liability company may be removed, with or without cause, at a meeting of the company's members called for that purpose." *Id.* § 101.304.

There is nothing to suggest that Peddle's managership was term limited, that she resigned, or that she was removed at a meeting of B.E.L.L.'s members. Again, there is nothing in the record that even shows who the members of B.E.L.L. are, much less when B.E.L.L.'s unidentified members supposedly met and removed Peddle as a manager.

## PEDDLE'S ALLEGED BREACH OF HER DUTY OF LOYALTY DOES NOT AUTHORIZE TOMASSO TO ACT UNILATERALLY

Tomasso next argues that even if "Peddle is a manager, . . . her actions [in opposing B.E.L.L.'s motion for substitution] are completely self-interested and in violation of the duty of loyalty to B.E.L.L." Dkt. 62 at 4. In support of this argument, Tomasso cites several cases that stand for nothing more than the somewhat obvious proposition that managers and/or members of LLCs have fiduciary duties. *See id.* at 4–5.

I will assume, without deciding, that Peddle has violated whatever duty she might owe B.E.L.L. by opposing its motion for substitution to clear purported liens asserted against B.E.L.L.'s property. Any breach of Peddle's fiduciary duty to B.E.L.L. does not automatically remove her as a manager, suspend her voting rights, transfer her managerial authority, or permit Tomasso to act unilaterally. Texas law does not generally treat conflicts of interest as self-executing disenfranchisement. Indeed, § 101.255 contemplates that an interested governing person may participate and vote on transactions in which they have an interest. *See* Tex. Bus. Orgs. Code § 101.255(d). Accordingly, even if I found that Peddle has breached her duty to B.E.L.L., that does not have the effect of authorizing B.E.L.L.'s motion.[4]

**B.E.L.L.'S MOTION IS NOT WITHIN THE ORDINARY COURSE OF BUSINESS**

Tomasso next argues that he can unilaterally authorize B.E.L.L.'s motion for substitution because such an action is within the ordinary course of business and "§ 101.356(b) of the Texas Business Organizations Code makes it clear that any

[4] Tomasso complains that Peddle's "position appears to be that had she sued for this alleged debt, she would have the power to block B.E.L.L. . . . from hiring an attorney to defend itself and then be able to take a default on the debt. This is an absurd result and not supported by the law." Dkt. 62 at 2 n.1. The supposed absurdity rests on a false premise: that because Tomasso cannot unilaterally cause B.E.L.L. to prosecute this federal action, he has no means to address B.E.L.L.'s dysfunction. Texas law supplies mechanisms for resolving an LLC's deadlock or dysfunction. Depending on Tomasso's relationship to B.E.L.L., Tomasso could seek declaratory and injunctive relief, appointment of a rehabilitative receiver, judicial winding up, or a derivative proceeding, to name a few. A federal admiralty action, however, is not a substitute for a proceeding to resolve the internal affairs of a Texas LLC. Nor would Peddle's hypothesized obstruction automatically entitle a claimant to a default judgment against B.E.L.L. Even if one of the alleged lienholders sued to enforce a purported maritime lien and Peddle prevented B.E.L.L. from defending itself, an entry of default would not entitle the claimant to a default judgment. The court would still have to determine whether the complaint's well-pleaded allegations established a valid maritime lien. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In doing so, the court would consider whether Krantz's managerial services constituted necessaries and whether Canada's and Forza 5's loans were qualifying advances giving rise to maritime liens. The court might well conclude that no maritime liens arose and deny default judgment.

action that falls within the ordinary course of business does not require a vote to be approved." Dkt. 62 at 5. Even assuming an ordinary-course action would not require a vote, moving for substitution as the plaintiff in this litigation is not within B.E.L.L.'s ordinary course of business.

In fact, Tomasso's authority for this argument states that "there is no evidence or allegation from which the Court could reasonably infer that the filing of a lawsuit . . . falls within the routine or ordinary course of . . . business so as to make it the equivalent to the 'habitual or mechanical performance of an established procedure.'" *St. Star Designs, LLC v. Gregory*, No. CIV.A. H-11-0915, 2011 WL 3925070, at *2 (S.D. Tex. Sept. 7, 2011) (quoting Webster's Ninth New Collegiate Dictionary at 1027 (1990)). The same is true here.

*LT Character, LLC v. Mort*, No. 4:24-cv-01053, 2026 WL 266455 (N.D. Tex. Feb. 2, 2026), is virtually indistinguishable in substance from the instant matter. LT Character had two member-managers: former TCU star running back and College Football Hall of Famer, LaDainian Tomlinson ("L.T."), and Cliff Dean. Dean purported to bring a suit against a former independent contractor of LT Character. L.T. did not authorize the suit. The trial court held that "an action beyond the ordinary course of business require[d] the affirmative vote of both [Dean and L.T.]." *Id.* at *4. The trial court also held that the filing and prosecution of a civil action was "not activity within the ordinary course of LT Character's business" and therefore Dean could not unilaterally institute the suit himself. *Id.* (collecting cases holding that hiring counsel and prosecuting or defending litigation is not within the ordinary course of business). The same is true here. Absent evidence that Peddle was effectively removed as a manager, B.E.L.L. cannot attempt to substitute itself as a plaintiff in a lawsuit without the affirmative vote of both Tomasso and Peddle.

**TOMASSO HAS NOT ESTABLISHED A DERIVATIVE ACTION**

Tomasso next argues that if Peddle can block B.E.L.L.'s motion for substitution, then Tomasso has standing to bring this action in the name of

B.E.L.L. as a derivative action. Dkt. 62 at 6. I will assume, without deciding, that Tomasso can institute a derivative action against Peddle as a present or former governing person without following the statutory requirements for instituting a derivative action in §§ 101.452–101.460 of the Texas Business Organizations Code. That would make little difference here because Peddle is not a lienholder. The purported lienholders in this case are Canada, Forza 5, and Linda Krantz. As to Canada, Forza 5, and Krantz, Tomasso must satisfy the requirements of §§ 101.452–101.460. *See id.* § 101.463(b). Tomasso admittedly has not satisfied these requirements and therefore cannot institute a derivative action against the purported lienholders in this case.

## TOMASSO LACKS AUTHORITY TO MAKE HIMSELF A BAILEE

In a last-ditch effort to manufacture standing, Tomasso claims that B.E.L.L. signed a bailment with Tomasso "that gave him possessory rights to stay on and possess" the *Southern Bell*. Dkt. 62 at 7. This is the weakest argument Tomasso advances. A mere possessory interest may be enough to permit a claimant to appear and defend in an in rem proceeding, but the *Southern Bell* has not been attached or arrested. This is not an in rem proceeding. This "jurisdictional defect can be waived if the owner of the *res* voluntarily appears." *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 183 (2d Cir. 2018) (quotation omitted). The *Southern Bell*'s owner is B.E.L.L., which I have already determined has not validly moved for substitution.[5]

## CONCLUSION

For all these reasons, I recommend that B.E.L.L.'s motion for substitution (Dkt. 58) be denied, and that the court sua sponte dismiss this case for want of

[5] There are other problems with Tomasso's bailment argument, like the fact that granting one manager indefinite possession of the LLC's sole asset, without rent and with limited liability for loss or damage, is plainly *not* in the ordinary course of business. Additionally, this purported bailment transaction depends upon the same unilateral authority that Tomasso cannot establish for directing B.E.L.L.'s filing of the instant motion.

subject matter jurisdiction. Dismissal does not validate the purported liens; it means only that, in this posture, this court lacks jurisdiction to adjudicate them.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 31st day of August 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE